UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSE F. GUERRERO,

                Plaintiff,

-against-

BETH T. DOUGLAS, as Former Assistant Department Advocate, Police Department City of New York, JOSHUA P. KLEIMAN, as Former Assistant Department Advocate, Police Department City of New York, CHARLES DEMATTEO, as Sergeant, Major Case Squad, Police Department City of Yonkers, MEGAN MADUS, as Detective, Major Case Squad, Police Department City of Yonkers, DENNIS MULLIN, as Detective, Police Department City of Yonkers, ROBERT SPINK, as Police Officer, Police Department City of Yonkers, each sued individually and in their official capacities as employees of The City of New York and Yonkers,

                Defendants.

**MEMORANDUM & ORDER**
**22-CV-1217 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Jose Guerrero, a former sergeant with the New York Police Department ("NYPD"), brings suit against various members of the NYPD and Yonkers Police Department ("YPD") in their individual and official capacities alleging denial of access to the courts in violation of 42 U.S.C. § 1983. (*See* Am. Compl. (Dkt. 13) at 14-15.) Guerrero asserts that the Defendants withheld exculpatory evidence and made fabricated claims during the course of an NYPD disciplinary proceeding, ultimately leading to his termination. The Defendants move to dismiss Guerrero's Amended Complaint in its entirety. (*See* NYPD Mot. (Dkt. 23); YPD Mot.

1

(Dkt. 26).) For the reasons stated below, the motion to dismiss is GRANTED with prejudice.

## I. BACKGROUND[1]

Guerrero, a former NYPD sergeant, was involved in a domestic dispute with his then-girlfriend Yahayra Feliz on December 23, 2015. (Am. Compl. ¶ 17.) Feliz was shot in the neck with Guerrero's off-duty 9MM handgun inside his apartment. (*Id.*) Thereafter, Defendants Megan Madaus, Charles DeMatteo, Dennis Mullin, Robert Spink, and Douglas Brady, all Yonkers Police Department officers ("YPD Defendants"), purportedly created a "false case" against Guerrero alleging that he intentionally or recklessly discharged his handgun during an argument with Feliz

---

[1] The following facts are taken from the Amended Complaint and, for the purposes of this motion to dismiss, are assumed to be true. *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 349 (2d Cir. 2022). Both parties attached supporting materials to their briefing on the instant motion. The court is permitted to consider documents that are incorporated into the Amended Complaint by reference or that are "integral" to it. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). A document is integral "where the complaint relies heavily upon its terms and effect." *Id.* at 153. Consideration of other materials would require the court to convert the motion to one for summary judgment and allow an opportunity for discovery. *Id.* at 154. Both the complaint in *Guerrero v. City of Yonkers* and Feliz's interview with Douglas and Kleinman are incorporated into the Amended Complaint by reference. (*See* Am. Compl. ¶¶ 13-16; *see also* Dkts. 24-2, 24-3, 26-3.) Detective Madaus's "Trial Room Testimony" is also referenced in the Amended Complaint and provided to the court. (*See* Am Compl. ¶ 18; *see also* Dkt. 26-7.) The court will thus consider these documents in weighing the instant motion. The Amended Complaint also references other documents that have not been provided to the court in this action, such as Feliz's 2021 deposition testimony. (*See* Am Compl. ¶ 18.) The court cannot consider materials that are not docketed in this action. The other documents attached to the parties' briefing, including those attached to the YPD Defendants' motion, (*see* YPD Mot. at 7 n.6), are relevant but are not relied on by Guerrero's Amended Complaint. The court thus excludes all other documents attached to the briefing over the motion.

over his infidelity. (*Id.*) Feliz, after recanting her initial story that she was shot while walking toward her apartment, signed a written statement claiming that she was shot by Guerrero following a heated dispute over his infidelity. (*Id.* ¶¶ 18, 28, 52.) Guerrero alleges that Detective Madaus created this statement and forced Feliz to sign it while tired and medicated at the hospital. (*Id.* ¶¶ 25-26.)

Guerrero was arrested by the YPD and suspended without pay from his NYPD job. (*Id.* ¶¶ 35-36.) During grand jury proceedings in Westchester County on June 8, 2016, Feliz disavowed her written statement and admitted to subjecting Guerrero to domestic violence, entering his apartment without permission, retrieving his unsecured off-duty 9 MM handgun, and being injured in the resulting struggle. (*Id.* ¶¶ 39-47.) Feliz also testified that she signed the written statement when "really tired" and "had a lot of meds [in her] body." (*Id.* ¶ 48.) Guerrero later corroborated this account as a witness. (*Id.* ¶¶ 56-58.) The Westchester County District Attorney withdrew the criminal charges against Guerrero on June 14, 2016. (*Id.* ¶ 59.)

Shortly thereafter, Defendants Beth Douglas and Joshua Kleinman ("NYPD Defendants"), then Assistant Department Advocates for the NYPD, began a proceeding to investigate and adjudicate disciplinary charges brought against Guerrero (the "NYPD disciplinary proceeding"). (*Id.* ¶¶ 60, 65.) During this investigation, a Westchester County Assistant District Attorney told Douglas that Feliz had disavowed the YPD criminal investigation, but Douglas did not communicate this renunciation to Guerrero. (*Id.* ¶¶ 60-62.) Feliz spoke to the NYPD Defendants on August 3, 2017 and again disavowed the narrative that Guerrero intentionally or recklessly discharged his 9MM handgun amidst an argument over his infidelity. (*Id.* ¶¶ 63-66.) Feliz recorded this interview because she did not trust the police. (*Id.* ¶ 64.) Douglas

3

and Kleinman then interviewed the YPD Defendants and proceeded with the disciplinary case. (*Id.* ¶ 68.)

In mid-August 2017, a disciplinary hearing was held before NYPD Assistant Deputy Commissioner for Trials David S. Weisel. (*Id.* ¶ 69.) During testimony on August 14, Feliz repeated the same statements that she made to the Westchester County grand jury in June 2016 and to Douglas and Kleinman on August 3, 2017—that Guerrero did not discharge his handgun intentionally or recklessly during an argument over his infidelity, but instead that the gun went off after she barged into his apartment and retrieved his firearm. (*Id.* ¶¶ 69-70.) Guerrero and Sergeant Neil Casey of the NYPD Force Investigation Division corroborated Feliz's account, while Detective Madaus and Officer Spink testified in opposition. (*Id.* ¶¶ 71-78.) On December 15, 2017, Assistant Deputy Commissioner for Trials Weisel recommended Guerrero's termination from the NYPD. (*Id.* ¶ 78.) Police Commissioner James P. O'Neill adopted this recommendation on February 1, 2018 and terminated Guerrero's employment. (*Id.* ¶ 79.)

On September 24, 2018, Guerrero sued the cities of New York and Yonkers, as well as various municipal employees associated with his criminal prosecution and termination from the NYPD, alleging false arrest, malicious prosecution, and race and gender-based discrimination. (*See* Feb. 4, 2020 M&O (Dkt. 28), *Guerrero v. City of Yonkers, et al.*, 18-CV-5353 (NGG) (RER) (E.D.N.Y. Feb. 4, 2020).) On February 4, 2020, this court dismissed Guerrero's claims against the New York City-related defendants but allowed certain claims against the Yonkers defendants to proceed. (*Id.* at 13.) The remaining defendants filed a motion for summary judgment on November 18, 2021, which remains pending. (*See* Mot. for Summ. J. (Dkt. 43), *Guerrero v. City of Yonkers, et al.*, 18-CV-5353 (NGG) (RER) (E.D.N.Y. Nov. 18 2021).)

The instant case arises from "newly discovered evidence" obtained during *Guerrero v. City of Yonkers*, including grand jury

4

testimony and the recording of Feliz's August 3, 2017 interview with Douglas and Kleinman. (Am. Compl. ¶¶ 13-16.) Guerrero brings a single claim for denial of access to the courts under 42 U.S.C. § 1983, alleging that the YPD and NYPD Defendants presented fabricated evidence, withheld information on Feliz's lack of credibility, and pursued the criminal case against Guerrero without credible evidence of serious misconduct or any criminal offense. (*Id.* ¶¶ 80-86.) He alleges that this "resulted in his termination from the [NYPD] causing the loss of all pay and benefits, a multimillion-dollar future pension distribution, punitive damages, emotional distress, legal expenses, and other costs[.]" (Opp. to NYPD Mot. (Dkt. 24) at 10; Opp. to YPD Mot. (Dkt. 27) at 10.)

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must contain facts that do more than present a "sheer possibility that a defendant has acted unlawfully." *Id.* In deciding a motion to dismiss, the court will accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). However, allegations that "are no more than conclusions [] are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150,

---

[2] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

161 (2d Cir. 2010). Dismissal for failure to state a claim is appropriate if it is clear from the face of the complaint that a claim is barred as a matter of law. *Biocad JSC v. F. Hoffman-La Roche*, 942 F.3d 88, 93 (2d Cir. 2019).

## III. DISCUSSION

At the outset, the court notes that the Amended Complaint centers on Guerrero's NYPD disciplinary proceeding. (Am. Compl. at 1-2.) Though the June 2016 Westchester County grand jury operated in the background, the Amended Complaint makes allegations principally with respect to the NYPD investigation and "Trial Room"—*i.e.*, the disciplinary proceeding (*Id.* ¶¶ 81-86.) This proceeding was not a criminal prosecution; it was an administrative process to adjudicate charges of misconduct that resulted in Guerrero's termination from the NYPD. (*Id.* ¶¶ 69, 79.) The Due Process Clause of the Fourteenth Amendment was, however, implicated in this proceeding because Guerrero possessed a property interest in his continued employment with the NYPD. *See Capul v. City of New York*, No. 19-CV-4313 (KPF), 2020 WL 2748274, at *7 (S.D.N.Y. May 27, 2020); *Quire v. City of New York*, No. 19-CV-10504 (RA), 2021 WL 293819, at *4 (S.D.N.Y. Jan. 28, 2021).

### A. Failure to State a Claim Under § 1983

Guerrero brings a single claim under § 1983 for denial of access to the courts. (Am. Compl. ¶¶ 80-86.)[3] "[T]he source of this right

---

[3] Both sets of Defendants also argue that Guerrero has failed to make out a § 1983 fabrication of evidence claim. (*See* NYPD Mot. at 10-11; YPD Mot. at 5-8.) Though it references fabricated evidence, Guerrero's Amended Complaint stylizes its sole claim for relief as one for denial of access under § 1983. (Am. Compl. ¶¶ 80-86.) The court is under no obligation to construe a counseled plaintiff's complaint as arguably raising claims it chose not to include. Accordingly, the court will not construe the Amended Complaint as raising a § 1983 fabrication of evidence claim.

6

has been variously located in the First Amendment right to petition for redress, the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments." *Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997). Such claims typically fall into one of two categories: (1) where a "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits," such as lack of access to law libraries; and (2) where the litigant claims that "they have irrevocably lost the ability to file a lawsuit, typically because of a massive government cover-up denying plaintiffs the ability to gather evidence." *Ponterio v. Kaye*, No. 06-CV-6289 (HB), 2007 WL 141053, at *9 (S.D.N.Y. Jan. 22, 2007).

The latter category looks "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Christopher v. Harbury*, 536 U.S. 403, 414 (2002); *see also Farella v. City of New York*, No. 05-CV-5711 (NRB), 2007 WL 2456886, at *6 (S.D.N.Y. Aug. 23, 2007) ("The Supreme Court's review of its own precedent . . . [establishes] that each of the backward-looking cases involved allegations of a cover-up by city or state officials."). "The viability of backward-looking right-of-access claims is far from clear in this Circuit." *Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012); *see also Oliva v. Town of Greece*, 630 F. App'x 43, 44 (2d Cir. 2015) (Summary Order). "To the extent that they exist, [backward-looking] claims would be available only if the governmental action caused the plaintiff's suit to be dismissed as untimely, or if a judicial remedy was completely foreclosed by public officials' false statement or nondisclosure." *Martinez v. City of New York*, 564 F. Supp. 3d 88, 101 (E.D.N.Y. 2021).

To plead denial of access, a plaintiff "must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to

the plaintiff." *Cancel v. City of New York*, No. 07-CV-4670 (RRM) (LB), 2010 WL 8965889, at *4 (E.D.N.Y. Mar. 3, 2010) (R&R). Actual injury entails showing that the alleged shortcomings hindered efforts to pursue an arguable, nonfrivolous underlying claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The plaintiff must in essence have "effectively lost (or was severely hampered in) the ability to file a lawsuit[.]" *Ponterio*, 2007 WL 141053, at *9. A denial of access plaintiff must also allege the underlying cause of action which has been lost through the defendants' malfeasance, as well as any available remedy under the access claim and presently unique to it. *Christopher*, 536 U.S. at 417-18. This is because a denial of access claim is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415. Moreover, "a plaintiff does not suffer a constitutional deprivation of access if he has other available avenues to bring his grievances before the court." *Waters v. Sunshine*, No. 07-CV-4753 (DLI) (LB), 2009 WL 750217, at *4 (E.D.N.Y. Mar. 19, 2009).

Guerrero's backward-looking denial of access claim runs into the threshold problem of not alleging any deprivation or hinderance of access to a *court*. *See Farella*, 2007 WL 2456886, at *7.[4] He

---

[4] Guerrero has not, however, abandoned his claims against the NYPD Defendants. (*See* NYPD Reply (Dkt. 26) at 3.) "A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 392 (S.D.N.Y. 2013). "[W]here abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and *circumstances viewed as a whole*, district courts may conclude that abandonment was intended." *Walter v. Queens College*, 390 F. Supp. 3d 382, 398 n.5 (E.D.N.Y. 2019) (emphasis in original). Guerrero's Amended Complaint brings a single claim under § 1983. He filed an opposition brief arguing that the Amended Complaint has alleged sufficient facts to sustain this claim. Guerrero's counsel appeared at a pre-motion conference to preview a response to the Defendants' then-

contends that the Defendants "interfered with and deprived him of his constitutional rights to prove his innocence in the *NYPD internal investigation and Trial Room*[.]" (Am. Compl. ¶ 81 (emphasis added).) This hearing took place in an internal NYPD administrative proceeding to adjudicate disciplinary charges. Though the proceeding bore many of the indicia of an Article III or state court—such as representation by counsel, presentation of witnesses, and examination of evidence—it was a creature of NYPD internal regulations and New York State statutory law empowered only to adjudicate NYPD employment matters. Nowhere in the Amended Complaint does Guerrero allege that that he was unable to bring a claim in an Article III or state court because of the Defendants' conduct. This raises the question of whether denial of access claims are cognizable in the context of NYPD disciplinary proceedings at all. Guerrero has not provided any caselaw to this effect, let alone precedent supporting the existence of denial of access claims in administrative proceedings. Nor has the court been able to identify any supportive precedent. The Second Circuit's reluctance to acknowledge the viability of backward-looking access claims at all, *see Sousa*, 702 F.3d at 128, suggests it may not be willing to extend denial of access liability to NYPD disciplinary hearings.

Even assuming, however, that denial of access claims are valid in the instant context, Guerrero fails to plead sufficient facts to state a claim. The Amended Complaint does not identify any underlying cause of action that was lost or substantially hampered a result of the Defendants' actions. Nor does it propose a judicial remedy that may have been awarded to Guerrero but was not otherwise available due to the Defendants actions. This alone

---

anticipated motion to dismiss. (11/22/2022 Minute Entry.) Notwithstanding the NYPD Defendants' contentions otherwise, (NYPD Reply at 3), it can hardly be said that the circumstances, viewed as a whole, suggest that Guerrero intended to abandon his sole claim for relief.

warrants dismissal. *See, e.g., Martinez,* 564 F. Supp. 3d at 101; *Raffaele v. City of New York,* 144 F. Supp. 3d 365, 374-75 (E.D.N.Y. 2015). Asserting a loss of a "constitutional right[] to prove [Guerrero's] innocence" is not enough. (Am. Compl. ¶ 81.; Opp. to NYPD Mot. at 9; Opp. to YPD Mot. at 9.) The specific cause of action that was lost or hindered must be expressly identified.

It is also not clear what "official actions hindered [Guerrero's] efforts" to pursue a claim. *Lopez v. City of New York,* No. 05-CV-3624 (ARR) (KAM), 2007 WL 2743733, at *13 (E.D.N.Y. Sept. 18, 2007). The Amended Complaint notes that this case arises from newly discovered evidence that came to light during *Guerrero v. City of Yonkers,* namely grand jury testimony and Feliz's recording of her August 3, 2017 interview. (Am. Compl. ¶¶ 13-16.) It later asserts that the NYPD never shared Feliz's "exculpatory evidence"—*i.e.,* the statements she made during her August 3, 2017 interview— with Guerrero and withheld from "the NYPD investigators and Trial Room [that] they were on notice Ms. Feliz lacked credibility[.]" (*Id.* ¶¶ 62, 82.) But the statements that Feliz made during the August 3, 2017 interview were consistent with those she made during the NYPD disciplinary hearing. (*Id.* ¶¶ 65-66, 69-70.) This account was further supported by the testimony of Guerrero and Sergeant Casey. (*Id.* ¶¶ 72-78.) Feliz's repudiation of her written statement and the reckless discharge theory were thus not kept from the disciplinary hearing. Nor were issues regarding her credibility. Feliz testified that she had previously made "false representations," but was now changing her story. (*Id.* ¶ 69.) This about face made her unreliability as a witness readily apparent to the factfinder at the NYPD disciplinary hearing. Guerrero further notes that the Defendants withheld that they had "NO CREDIBLE EVIDENCE that he engaged in serious misconduct or committed any criminal offense." (Am. Compl. ¶ 82.) But this allegation is conclusory and undermined by the fact that Douglas and Kleinman pursued the disciplinary case at all,

and that Commissioner Weisel found sufficient wrongdoing to recommend Guerrero's termination. (*Id.* ¶ 78.) There is also no indication that the Defendants believed they lacked credible evidence. The Amended Complaint thus fails to identify specific "exculpatory information" that was withheld from the NYPD disciplinary hearing.[5]

To the extent Guerrero argues that Douglas and Kleinman's failure to disclose the August 3, 2017 interview hindered his ability to bring a claim, he has failed to provide specific, non-conclusory allegations establishing how it did so. *See Penz v. Fields*, No. 21-CV-005 (VB), 2021 WL 5507249, at *4 (S.D.N.Y. Nov. 23, 2021) ("General statements that a defendant's conduct hindered a plaintiff's pending lawsuit, absent any factual support, are insufficient to sustain an access-to-courts claim."). He does not allege that he would have taken any different actions nor that the result would have differed but for disclosure of this interview. Guerrero has also not alleged or otherwise shown that the NYPD Defendants were obligated to disclose the August 3, 2017 interview. His opposition briefs do not cite, nor has the court been able to identify, any caselaw suggesting that due process compels public employers to turn over exculpatory or potentially exculpatory materials in employment disciplinary proceedings. (*See generally* Opp. to NYPD Mot.; Opp. to YPD Mot.) New York Civil Service

---

[5] The NYPD Defendants note that "even if the recording indicated that Feliz told them she had lied about fighting with Plaintiff regarding his infidelity and that he had not intentionally or recklessly discharged his weapon, that fact is entirely irrelevant as Plaintiff was not terminated for those reasons. He was terminated for a having had a physical [altercation] and discharging his weapon." (NYPD Mot. at 11.) If Guerrero's termination was not predicated on the reckless discharge theory, but for other non-contested reasons, this would also defeat Guerrero's claim. The Amended Complaint does not, however, allege facts to this effect, nor does it incorporate any documents that do so. The court is thus unable to accept this assertion for purposes of the instant motion.

11

Law § 75 ("Article 75"), which governs procedures for termination hearings of public employees in New York, also does not expressly mandate disclosure of such materials. *See* N.Y. Civ. Serv. Law § 75(2); *see also* New York Police Department, Disciplinary System Penalty Guidelines 6-7 (2021). The nondisclosure of the August 3, 2017 interview thus cannot, as alleged, provide the basis for a denial of access claim.

Accordingly, Guerrero has failed to state a § 1983 claim for denial of access.[6]

### B. Timeliness

The Defendants also argue that the Amended Complaint was not filed within the three-year statute of limitations for § 1983 claims in New York, as the disciplinary proceeding occurred in 2017 and Guerrero should have known that his cause of action accrued then. (NYPD Mot. at 7-8; YPD Mot. at 8-10.) Guerrero counters that he only became aware of the cause of action upon discovery of Feliz's recorded interview with Douglas and Kleinman during discovery in *Guerrero v. City of Yonkers* in 2022. (Opp. to NYPD Mot. at 8 n.1; Opp. to YPD Mot. at 8, n.1.)[7] The parties are correct that § 1983 claims in New York must be brought within three

---

[6] In the absence of a deprivation of a constitutional right, there can be no *Monell* liability for a municipality. *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97-98 (2020) ("The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right."). To the extent that Guerrero seeks *Monell* liability, his failure to state a § 1983 claim necessarily implies that New York City and Yonkers cannot be held liable for the individual Defendants' actions. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

[7] Because the Amended Complaint in this action is not an amended pleading in *Guerrero v. City of Yonkers*, it cannot relate back to the filing of the complaint in that separate matter. *See generally* Fed. R. Civ. P. 15(c).

years of when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir. 1999) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)); *see also Collins v. Miller*, 338 F. App'x 34, 36 (2d Cir. 2009) (Summary Order).

Because Guerrero has not clearly articulated the nature of the harm arising from the discovery of Feliz's recording, the court cannot determine whether this event triggered the limitations period. The court need not resolve this dispute, however, because Guerrero has failed to state a claim for other reasons.

## IV. CONCLUSION

In sum, Guerrero has failed to state a claim. His briefing in opposition does not seek leave to amend upon a finding of dismissal. Moreover, "[a]n opportunity to amend is not required where the plaintiff already has amended the complaint." *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 166 (E.D.N.Y. 2014). Accordingly, the NYPD and YPD Defendants' motions to dismiss are GRANTED WITH PRJEUDICE.

SO ORDERED.

Dated:   Brooklyn, New York
         August 7, 2023

                                    s/Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge